IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| BILLI JO SMITH,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | 4:17-CV-00132-RGE-CFB<br><br><br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Billi Jo Smith moves for reversal of Defendant Social Security Commissioner's decision denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") and supplemental security income payments ("SSI") under Title XVI of the Act. 42 U.S.C. §§ 401–434, 1381–1385. Alternatively, Smith moves for remand to the Commissioner with instructions to appropriately assess her residual functional capacity ("RFC") in accordance with the evidence in the record. The Commissioner asserts that the Court should affirm the denial of benefits, as the decision is supported by substantial evidence in the record as a whole. This Court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Smith complains that the Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence in the record, because the ALJ's determination of Smith's RFC did not include an evaluation of her ability to sit. Alternatively, Smith argues that the ALJ's decision was internally inconsistent, and therefore not supported by substantial evidence in the record as a whole.

## I. PROCEDURAL HISTORY

Smith filed a Title II application for DIB and a Title XVI application for SSI on April 5, 2013, alleging a disability onset date of March 10, 2010, due to back pain stemming from scoliosis and prior back surgeries. These claims were denied on September 4, 2013, and again upon reconsideration on November 26, 2013. Smith requested and received a hearing before ALJ Tela L. Gatewood on July 22, 2015. Smith and Vocational Expert ("VE") Roger Marquardt

1

testified at the hearing. Smith's sister, Julie Smith, and 15-year-old son, Slater Kirk, also testified. After the hearing, Smith's case was transferred to ALJ Michael D. Shilling for a decision. The ALJ found that Smith was capable of making a successful adjustment to other work that existed in significant numbers in the national economy and was not disabled any time during the relevant period: from December 14, 2011, the day following the unfavorable decision regarding her previous application for benefits, to January 28, 2016, the date of the ALJ's unfavorable decision regarding her current application. (Tr. 18–19). Smith sought review before the Appeals Council.

The Commissioner's decision became final on February 14, 2017, when the Appeals Council denied Smith's request for review of the ALJ's decision. (Tr. 1). Smith filed a timely Complaint to appeal the denial of benefits. (ECF 1). On April 20, 2017, this case was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF 4). Briefing was complete on December 11, 2017, the deadline for Smith to file her Reply brief. This matter is fully submitted.

## II. FACTS AND ALJ DECISION

To qualify for benefits under the Act, Smith must have been disabled. The Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The ALJ used a five-step sequential evaluation to determine that Smith was not disabled within the meaning of the Act.[1] On January 28, 2016, the ALJ issued a decision denying Smith's

---

[1] 20 C.F.R. § 404.1520(a)(4) provides:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of [subpart P of part 404 of this chapter] and meets the duration requirement, we will find that you are disabled. . . .

claims for DIB under Title II and SSI under Title XVI of the Act. In her decision, the ALJ made the following findings:

- Smith met the insured status requirements of the Act through June 30, 2015;
- She has not engaged in substantial gainful activity since December 14, 2011, the beginning of the relevant period (20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*);
- She has the following severe impairments: scoliosis, spondylosis of the lumbar spine, and obesity (20 C.F.R. §§ 404.1520(c), 416.920(c));
- She does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926);
- She has the RFC to perform a full range of sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a);
- She is unable to perform any past relevant work (20 C.F.R. §§ 404.1565, 416.965);
- She was born on February 5, 1971, and in 2010, on the alleged disability onset date, was 39 years old, which is classified as a younger individual aged 18–44 (20 C.F.R. §§ 404.1563, 416.963);
- She has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564, 416.964);
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Smith is "not disabled," whether or not she has transferable job skills (*See* SSR 82-41; 20 C.F.R. Part 404, Subpart P, Appendix 2);

---

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

- Considering Smith's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a)); and
- Smith has not been under a disability, as defined in the Act, from December 14, 2011, through January 28, 2016, the date of the ALJ's decision (20 C.F.R. §§ 404.1520(g), 416.920(g)).

(Tr. 13–18).

The ALJ found Smith had no nonexertional limitations, and had an RFC to perform a full range of sedentary work. Because Smith's past relevant positions are defined in the Dictionary of Occupational Titles as "medium work," she has no past relevant work she can perform. (Tr. 17). However, because of Smith's age, education, previous work experience, and RFC, the ALJ found that the Medical-Vocational Guideline Rules 201.28–29 required a finding of "not disabled." 20 C.F.R. Part 404, Subpart P, Appendix 2.

### A. Educational and Vocational Factors

Smith was born on February 5, 1971, and was 44 years old at the time of the hearing in 2015. She is a high school graduate and has completed two years of college. She has past relevant work as a salvage laborer, home attendant, child monitor, and cook helper. (Tr. 17). At the time of the hearing, she lived in Carroll, Iowa, with four of her six children.

### B. Medical Evidence

The following is a summary of the relevant medical evidence contained in the case transcript.

On January 7, 2014, Smith visited the McFarland Clinic in Jefferson, Iowa, to establish care and get a referral for her back pain. (Tr. 568). The treating physician noted that she had severe scoliosis, with a 54-degree curve, and that she had chronic back pain, primarily on her left side. She stated that she did not want narcotics for the pain, but sought a referral so that she could obtain treatment for her back. She was taking Aleve for the pain. The treating physician referred her to Dr. Sarkis Kaspar, M.D. (Tr. 568).

On February 25, 2014, Smith visited the McFarland Clinic in Ames, Iowa, for an appointment with Dr. Kaspar. (Tr. 550). Smith reported that she had been experiencing constant back pain for four years, which was often unbearable; she had to lean on a cart to get through a store. She stated that she was losing grip in her hands and could not zip her coat. (Tr. 550). One

4

of her treatment providers at some point had offered her narcotic pain medications, but she had refused to take them. Dr. Kaspar did a physical examination. He diagnosed her with scoliosis, and recommended treatment, including a CT scan. Dr. Kaspar also noted that she was obese, with a body-mass index of 36.7%, and suspected that she suffered from carpal tunnel syndrome as well. An x-ray was performed, which revealed scoliosis in the lumbar spine, Harrington rod fixations, and degenerative changes in the sacroiliac joints. (Tr. 566). A CT scan of the lumbar spine revealed extensive thoracolumbar levoscoliosis,[2] no definite areas of significant spinal canal or neural foraminal stenosis,[3] and no acute fractures. (Tr. 567).

On May 13, 2014, Smith visited the McFarland Clinic in Ames, Iowa, for a follow-up appointment with Dr. Kaspar. (Tr. 555). Dr. Kaspar stated that he would arrange a c-spine MRI to analyze Smith's hand paresthesia. He noted that Smith was taking Aleve and Tylenol for her back pain, and wanted to avoid stronger drugs. He reviewed her CT scan from February 2014; it revealed solid lumbar Harrington fusion and spondylosis below it, with some stenosis. He noted that she could try a caudal epidural, but she was strongly against any cortisone shots. She had never been to physical therapy. (Tr. 557). Dr. Kaspar noted that Smith was "able to live with most of these issues and her goal is to rehabilitate and function and cope with the issues, not looking for too much intervention." (Tr. 557). He instructed her to continue taking Tylenol, Voltaren,[4] and Aleve, and referred her to physical therapy.

On May 19, 2014, Smith visited the McFarland Clinic in Jefferson, Iowa, for a pre-employment health screening examination, and to complete a child care provider medical form. (Tr. 571). A physical exam was unremarkable, and revealed no spinal or costovertebral angle tenderness. The examining physician identified no restrictions. (Tr. 572).

---

[2] Levoscoliosis is an abnormal leftward curvature of the spine. *What is Levoscoliosis and How Is It Treated?*, Healthline, https://www.healthline.com/health/levoscoliosis (last visited Dec. 14, 2017). Thoracolumbar levoscoliosis is a form of levoscoliosis that resides in the "lower thoracic (mid-back) and the upper lumbar (lower back) regions of the spine." *Thoracolumbar Scoliosis Explained*, Scoliosis SOS Clinic (Dec. 14, 2016), http://www.scoliosissos.com/news/post/thoracolumbar-scoliosis-explained.

[3] "Foraminal Stenosis is the narrowing of the cervical disc space caused by enlargement of a joint (the uncinate process) in the spinal canal." *Foraminal Stenosis Definition*, Spine-Health, https://www.spine-health.com/glossary/foraminal-stenosis (last visited Dec. 14, 2017).

[4] Voltaren (diclofenac) is a non-steroidal anti-inflammatory drug (NSAID) that is used to relieve pain, swelling, and joint stiffness. *Voltaren Tablet, Delayed Release (Enteric Coated)*, WebMD, https://www.webmd.com/drugs/2/drug-54/voltaren-oral/details (last visited Dec. 14, 2017).

On June 3, 2014, Smith visited the physical therapy department of the McFarland Clinic in Ames, Iowa, for an initial evaluation with Jill Robinson-Baier, DPT. (Tr. 559). After discussing the history of her symptoms, Robinson-Baier noted that her functional limitations included:

1. Difficulty sitting for a prolonged duration in the car.
2. Inability to stand to perform cooking and cleaning tasks.
3. Difficulty with prolonged ambulation.
4. Inability to lie to sleep at night.

(Tr. 560). Smith reported that prior to 2010, she was able to perform these activities without dysfunction; she was able to sit for up to two hours in the car, stand for 30 minutes to cook and clean, lie to sleep at night, and walk for 30 minutes. Robinson-Baier noted that she had limited range of motion in her trunk, and could only sit for about ten minutes without discomfort. (Tr. 560). Her treatment plan included range-of-motion and lumbar dynamic stabilization exercise, body mechanics/postural training, back education, and a strong emphasis on home exercise. Robinson-Baier believed that Smith was a good candidate for physical therapy, and instructed her to return once a week for six weeks. (Tr. 560).

On October 9, 2014, Smith was seen by Dr. Kaspar at the McFarland Clinic in Ames, Iowa. (Tr. 561). Smith reported that physical therapy did not help her back pain, with the exception of the TENS (Transcutaneous Electrical Nerve Stimulation) unit, which helped reduce her pain when walking longer distances. She refused to consider a caudal lumbar epidural steroid injection for her pain. She reported that she had to sit and rest, and avoid certain activities, due to her back pain. Smith did not fill the Voltaren prescription because of its cost, but agreed to try over-the-counter topical creams, Biofreeze, and Tylenol; she declined medications that would make her drowsy, such as Flexeril, Neurontin, and Tramadol, but takes Aleve. (Tr. 562). She stated that she would continue using the TENS unit. Dr. Kaspar instructed her to follow up in four months if her condition did not improve.

On October 13, 2014, Smith had a physical therapy appointment with Robinson-Baier at the McFarland Clinic in Ames, Iowa. (Tr. 564).[5] She reported that she was still experiencing significant back and leg pain after walking one block. She stated that leaning against a baby stroller helped, but that she still needed to sit after 10 to 15 minutes of walking. Robinson-Baier

---

[5] Robinson-Baier noted that Smith had last attended physical therapy in August 2014, although records for such a visit are not included in the transcript. (Tr. 564).

noted that she educated Smith regarding stenosis, and instructed her to reinitiate her home exercise program. Smith reported some relief of symptoms, but Robinson-Baier believed that her symptoms required intervention aside from physical therapy. (Tr. 565). Smith was discharged from physical therapy. (Tr. 565).

**C. Consultative Examinations**

Following a previous application for benefits, on June 13, 2011, Smith was seen for a consultative examination by Robin Epps, DPT, at Medix Occupational Health Services in Ankeny, Iowa. (Tr. 509). Smith reported to Epps that she had had a rod in her back since she was a child. She stated that she can only lift 10 pounds, and experiences pain between her shoulders when lifting too much. She reported that she has constant, aching pain in her lower back, and that she takes over-the-counter pain medications and uses a heating pad to manage her pain. She reported that standing for too long increases her pain, that her back painfully pops when she walks, and that sometimes pain shoots down one of her legs. (Tr. 509). She stated that she had not seen a doctor for many years for her pain. She denied using tobacco, alcohol, or illegal substances.

Epps' report reflected Smith's reported activities of daily living. (Tr. 510). According to Smith, she usually slept from 9:30 or 10:00 p.m. to 7:00 a.m., and had some problems sleeping due to back and leg pain. She spent her days getting her children up and ready for school, making breakfast, cleaning the house, washing dishes, feeding the dog, and feeding her five-month-old baby. She reported that she had problems walking, climbing stairs, gripping things with her hands, and driving and riding in a car. (Tr. 510).

Epps performed a physical examination of Smith. (Tr. 511). She noted that Smith walked with an easy gait. She was able to heel-and-toe walk without difficulty, she was able to squat without difficulty, and she was able to get on and off the examination table without difficulty. Epps noted curvature of her spine and a scar on the midline of her back, extending from the upper thoracic to the lumbar area. (Tr. 511). Palpation of the lumbar paraspinous (lower back) muscles showed mild tenderness. Smith's arms and legs showed no muscle wasting or fullness. Examination of Smith's hips and legs were unremarkable. Examination of her elbows, shoulders, wrists, and hands were also unremarkable; grip strength was normal. (Tr. 512).

Epps analyzed Smith's range of motion, finding it to be normal for her shoulders, elbows, wrists, knees, hips, cervical spine, and ankles. (Tr. 514–15). Smith had a limited range of motion

7

for lumbar spine, due to pain. A straight leg raise was negative for both legs. Epps noted that Smith's gate was normal, and that she had full muscle strength in her lower and upper extremities. (Tr. 514–15).

In Epps' opinion, Smith had functional restrictions due to scoliosis. Epps concluded that Smith was limited to occasionally lifting, pushing, pulling, and carrying 10 pounds from floor to waist, waist to shoulder, and over the shoulder. (Tr. 512). Epps opined that, due to scoliosis, Smith could: occasionally sit, stand, and walk; rarely stoop, bend, crawl, and kneel; rarely walk on uneven surfaces or use stairs; never use ladders; occasionally use her upper and lower extremities; and occasionally grip or grasp objects. (Tr. 512). Epps stated that Smith had no vision, hearing, or communication restrictions, but was restricted to rarely traveling.

On August 19, 2013, following her present application for benefits, Smith was seen for a consultative examination by Dr. Majed Barazanji, M.D., at Barazanji Family Medical Clinic in West Des Moines, Iowa. (Tr. 539). Smith reported that she had been complaining of back pain since she was a child, and that the pain was at her entire spine. (Tr. 545). She indicated that she had severe scoliosis as a child, and had had back surgery in 1985, 1988, and 1990. She reported that her pain was constant, and both a sharp and dull ache; it intensified when she was standing, lifting, walking, and bending. (Tr. 545). She stated that the pain radiates to her left, but denied numbness or tingling in her leg, although she did experience occasional numbness in her arms and hands. She also reported occasional neck pain. A review of all other systems was unremarkable, and Dr. Barazanji noted that she appeared healthy, in no acute distress. (Tr. 545). Smith reported that she did not use alcohol, tobacco, or street drugs, but drank one cup of coffee per day. She stated that she was currently taking only Aleve to manage her back pain. (Tr. 543).

Dr. Barazanji reviewed Smith's range of motion, finding it to be normal, with the exception of her cervical and lumbar spines, which were moderately limited. (Tr. 546). A straight leg test was normal for both legs. Smith could fully extend her hand and could form a fist. Her grip strength for her left hand was moderately diminished.

Regarding Smith's functional limitations, Dr. Barazanji stated that she may have problems stooping, climbing, kneeling, and crawling, but that she has no limitations in handling objects, seeing, hearing, speaking, and traveling. (Tr. 547). She also had no limitations with work environments such as dust, fumes, temperature, and hazards. Dr. Barazanji opined that Smith

could stand for one hour, walk for one to two blocks, and lift 10 to 20 pounds. He further stated: "In my opinion there should be no limitations regarding sitting." (Tr. 547).

**C. Hearing Testimony**

At the July 2015 hearing before ALJ Tela L. Gatewood, Smith testified that her back and hip pain kept her from working. (Tr. 55). She stated that she has experienced pain in her back since she was a child, but in the last few years it had become unbearable. She testified that she has had scoliosis since she was a child, when she had several surgeries on her back. Her pain was primarily on the left side of her body, and for the last eight months, it had been radiating into her arms.

Smith testified that she was seeing a doctor in Ames, Iowa, for treatment. (Tr. 56). She stated that she does not take prescription pain medications because she has teenage children; instead, she takes Aleve and uses a heating pad and a TENS unit to manage her pain. (Tr. 56–57). She has not had any injections. She testified that she went to physical therapy for a while, but discontinued it because it was not helping her symptoms. (Tr. 56–57).

Smith testified that she is unable to walk very far, and that she does not use a cane to walk. (Tr. 58). She stated that when she goes grocery shopping, she leans on her shopping cart for support. She testified that she is able to walk the length of her driveway, 12 feet, but cannot walk one block to the mailbox. (Tr. 58). She believed that she could stand 25 to 28 minutes, but that it bothers her hip.

Smith testified that on a typical day, she gets up, makes breakfast, and cleans up around the house as much as she can. (Tr. 51). Her children drive for her and help her clean. She sorts and folds the laundry, but her children load the washer and dryer. One of her sons vacuums the house. Smith testified that she does the dishes, but must sit and take periodic breaks. (Tr. 52). She occasionally goes grocery shopping, but does not usually cook. She attends her children's parent–teacher conferences. (Tr. 54). Smith testified that she does not go to church, visit friends or neighbors, or engage in social activities. However, several years ago around Christmas time, her daughter drove her down to Oklahoma to visit her sister. (Tr. 55).

Smith's 15-year-old son, Slater Kirk, testified at the hearing. (Tr. 60). Kirk lives with Smith, and testified that she cleans up around the house, helps put children to bed, and usually cooks for the family. (Tr. 61). Because she cannot lift very much, the children usually do the laundry, take care of the family dog, do the yardwork, go grocery shopping, and drive. (Tr. 61).

Smith's sister, Julie K. Smith ("Julie"), testified at the hearing. (Tr. 62). Julie used to see Smith every day, but since moving to Oklahoma approximately a year before the hearing, has seen her about once a month. She testified that, when she lived in Iowa, she helped Smith vacuum, wash dishes, bring in groceries, bathe and dress her children, and help get them ready in the mornings. (Tr. 63). When Julie came over, she would usually find Smith sitting or lying in bed with a heating pad on. She testified that Smith leans forward when she walks. (Tr. 64). She believed that sometimes Smith could not feel her legs, particularly her left leg. Because Smith was not working to support herself, Julie allowed her to live in her house rent-free. (Tr. 65).

At the hearing, the ALJ questioned the VE about a hypothetical individual having the following constraints:

- Smith's age, education, and past work experience;
- Able to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently;
- Able to stand or walk with normal breaks for two hours in a work day, and sit for six hours in a work day;
- Able to balance, stoop, kneel, and crouch, and climb ramps or stairs occasionally;
- Unable to crawl or climb ladders, ropes, or scaffolds;
- Limited to walking on level terrain;
- Unable to work in extreme cold, or with vibrations. (Tr. 68).

The VE testified that the hypothetical person would not have any past relevant work—as customarily performed—that she could perform; however, the hypothetical person would be able to perform the jobs of home attendant and child monitor, as they are described in Smith's work history reports. (Tr. 69). The ALJ asked the VE if a hypothetical individual with the same constraints, who had the ability to stand for only one hour, but who could sit as needed, would be able to work. The VE testified that such an individual could also perform the jobs of home attendant and child monitor. (Tr. 69). The ALJ also asked the VE if a hypothetical individual with the same constraints, but who needed to miss work approximately three times per month, would be able to work. The VE testified that employers would not tolerate such absenteeism.

### III. STANDARD OF REVIEW

The Court will uphold an ALJ's decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but is enough that "a reasonable mind would find [it] adequate to support the Commissioner's conclusion." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015) (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)

(reasoning that substantial evidence means "more than a mere scintilla"). The Court considers evidence that both supports and detracts from the ALJ's decision. *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010). If substantial evidence supports the ALJ's decision, the Court will not reverse merely because substantial evidence exists in the record that would support a contrary outcome, or because the Court would have determined the case differently. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007)). The ALJ's decision must have been outside the available "zone of choice" for it to warrant reversal. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (citing *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). That a reviewing court may have reached a different decision is not grounds for reversal so long as substantial evidence supports the ALJ's decision. *Id.*

The Court also reviews the Commissioner's decision to determine if there was a procedural error, an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). Issues of law are reviewed *de novo*, with deference accorded to the Commission's construction of the Social Security Act. *Petersen v. Astrue*, 633 F.3d 633, 636 (8th Cir. 2011) (citing *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992)).

To establish entitlement to benefits, a claimant must show he or she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted, or can be expected to last, for a continuous period of at least 12 months. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A). The claimant bears the burden of persuasion in proving the RFC. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citing *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010)).

## IV. DISCUSSION

The ALJ's decision followed the five-step sequential evaluation set forth in the Social Security regulations. *See* 20 C.F.R. §§ 404.1520, 416.920. The parties do not dispute the ALJ's findings in the first four steps of the analysis. The ALJ found that Smith had an RFC to perform a full range of sedentary work. Based on this RFC finding, the ALJ found that Smith was not disabled, because there were jobs existing in significant numbers in the national economy that she could perform. The ALJ did not find Smith's alleged subjective limitations credible because they were not supported by substantial medical evidence in the record.

Smith argues that the ALJ's decision is not supported by substantial evidence, because the ALJ never evaluated Smith's ability to sit for extended periods. Alternatively, Smith argues

that the ALJ's decision is internally inconsistent. Smith does not state how the decision is internally inconsistent. The Commissioner argued that the Court should affirm the ALJ's decision, because the burden for proving RFC rests on the claimant, and the ALJ properly found that Smith retained the RFC to perform a full range of sedentary work.

The claimant has "the burden of persuasion to prove disability and demonstrate RFC." *Vossen*, 612 F.3d at 1016. The ALJ has a duty, independent of the claimant's burden to press her case, to develop the record fully and fairly. *Combs v. Berryhill*, 868 F.3d 704, 708 (8th Cir. 2017). The Court must determine on a case-by-case basis whether the ALJ has satisfied its duty to develop the case—there is no bright line test. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994).

In determining a claimant's RFC, the ALJ should consider "all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Gann v. Berryhill*, 864 F.3d 947, 951 (8th Cir. 2017) (quoting *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003)) (alteration in original). Although it is the ALJ, not a physician, who determines a claimant's RFC, that determination is a medical question and must be supported by medical evidence. *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004). An ALJ may not discount a claimant's allegations simply because they are not fully supported by the record, but an "ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th 2005); *accord Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). An ALJ's RFC determination need only include those impairments found to be supported by substantial evidence. *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (citing *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996)).

The ALJ properly considered the evidence in the record when determining Smith's RFC. The ALJ considered Smith's consultative examination performed by Robin Epps, DPT, on June 13, 2011.[6] The ALJ noted Epps' observations that Smith had reduced range of motion in her lumbar spine, but exhibited a normal gait and full strength in her bilateral upper and lower extremities; she could heel and toe walk, squat, and get on and off of the examination table without difficulty. Epps opined, in relevant part, that Smith could occasionally sit, stand, and

---

[6] The ALJ mistakenly indicated that the examination was performed by John Kuhnlien, D.O. (Tr. 15). Review of the record reveals that the examination was performed by Epps, at the office of Dr. Kuhnlien.

walk. The ALJ afforded Epps' opinions some weight, but found that her functional examination did not support her postural limitations.

The ALJ considered Dr. Barazanji's consultative examination performed in August 2013. The ALJ noted Dr. Barazanji's observations that Smith had reduced range of motion in her lumbar spine, but exhibited negative straight leg raises, full strength in her bilateral upper and lower extremities, normal sensation and reflexes, and a normal gait. Dr. Barazanji opined that Smith had limitations regarding stooping, climbing, kneeling, and crawling, and that she could stand for one hour, walk for one to two blocks, and lift 10 to 20 pounds. However, Dr. Barazanji did not believe that Smith had any limitation regarding sitting. The ALJ afforded Dr. Barazanji's opinion limited weight, because his examination, observing full strength and only some reduced range of motion, does not support any postural limitations.

The only support in the record for the proposition that Smith is significantly limited in her ability to sit for prolonged periods is her subjective allegations. At several places in her reports to the Social Security Administration, Smith indicated difficulty sitting as one of her functional limitations. At a physical therapy appointment with Robinson-Baier in June 2014, Smith reported difficulty sitting for a prolonged duration in a car, standing to cook and clean, walking for a prolonged period, and falling asleep at night; she alleged that she could sit for only ten minutes without discomfort. These allegations are reflected in Robinson-Baier's notes. At a physical therapy appointment with Robinson-Baier in October 2014, Smith reported leg pain and difficulty walking, but did not mention difficulty sitting.

The ALJ summarized Smith's hearing testimony regarding her allegations: her back and hip pain was becoming unbearable and was mostly on her left side; she used a TENS unit and heating pad; she did not use a cane, and instead simply did not walk; she spent most of her time at home sitting in a straight-back chair; and she could stand for only 20 to 25 minutes at a time.

At the hearing, Smith indicated that she struggled walking and standing, but never claimed to have difficulty sitting for prolonged periods. The only time Smith discussed her ability to sit was when she stated that she spends most of her day sitting in a chair at home.

Additionally, the ALJ noted that Smith's son testified at the hearing that she cleaned the house and sometimes made meals, but could not lift much weight, and spent most of her time sitting. He noted that Smith's sister testified Smith has difficulty getting out of bed and completing chores, she walks leaning forward, and she sometimes cannot feel her left side.

13

The ALJ stated that he did not find Smith's allegations regarding pain and limitations to be credible, because the record did not show her having significant limitations from her impairments. He noted that while Smith has alleged significant pain, she has undergone minimal treatment. She declined injections or stronger medication. To cope with the pain, she used a TENS unit and over-the-counter medications, but refused epidural steroid injections and prescription medications. She has not required surgery during the relevant period. Imaging of her lumbar spine revealed some spondylosis, but no significant canal or foraminal stenosis. At her doctors' visits, she regularly exhibited full strength and sensation, normal reflexes in her legs, negative straight leg raises, and a normal gate.

The ALJ also reviewed Smith's reported activities of daily living. He noted that, while her activities were somewhat limited, she was able to care for her children, clean, do laundry, go grocery shopping, and take a two-week vacation during the relevant period.

The ALJ appropriately compared Smith's alleged limitations to the evidence reviewed above, and determined that her alleged limitations were inconsistent with substantial evidence in the record. The evidence, including the medical evidence and Smith's activities of daily living, demonstrates that Smith was not as limited as she claimed. Smith's alleged inability to sit for prolonged periods is not supported by substantial evidence in the record, and the ALJ did not need to consider it in determining Smith's RFC.

Substantial evidence in the record as a whole, including all of the medical reports from consultants and Smith's treating physicians and her testimony at the hearing, supports the ALJ's conclusion that Smith has an RFC of sedentary work. Because Smith is able to perform jobs that exist in substantial numbers in the national economy, a finding that she is disabled is not required.

## V. CONCLUSION

The ALJ did not err in denying Smith disability insurance benefits or supplemental security income payments. The ALJ's findings and conclusions were supported by substantial evidence in the record. Viewing the record as a whole, and considering evidence that both supports and detracts from the ALJ's decision, the Court finds that there is substantial evidence to support the ALJ's findings and conclusions. The ALJ's decision to deny Smith benefits should be affirmed. Smith's request that the Court order benefits to be awarded, or that the case be remanded for further findings, should be denied.

## VI. REPORT AND RECOMMENDATION

IT IS RESPECTFULLY RECOMMENDED that the Commissioner's decision to deny Smith benefits be affirmed.

IT IS ORDERED that the parties have until December 29, 2017, to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(C). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *see also St. Jude Med. S.C., Inc. v. Tormey*, 779 F.3d 894, 902 (8th Cir. 2015) (citing *McDonald v. City of St. Paul*, 679 F.3d 698, 709 (8th Cir. 2012)). Failure to timely file objections may constitute a waiver of Plaintiff's right to appeal questions of fact. *United States v. Kelley*, 774 F.3d 434, 439 (8th Cir. 2014) (citing *Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

Dated this 14th day of December, 2017.

CELESTE F. BREMER
UNITED STATES MAGISTRATE JUDGE